May it please the court. Thank you. The question before you today is singular. What is the plain meaning of section 3583G as written by Congress? The very existence of that subsection can only mean one thing. That Congress meant subsection G to operate differently than revocations or other offenses. When they mandated a punishment based on a specified new crime, they were punishing for that new crime. When Congress says if you commit a new crime of possession of a firearm while you are on supervised release, your supervised release must be revoked and prison time must be imposed. It is the new crime causing the revocation that's required and the prison time that's required. Again, if Congress did not mean to punish for the specified new crime, that section would not exist. That is why jeopardy attached in my case and is the only reason we are here today. I'm not arguing that Mr. Wilson's supervised release hearing violated his right to a jury trial or that his sentence had some kind of problem with a mandatory minimum or quite frankly whether 3583G is constitutional or not. I am only here on whether the plain meaning of section G caused jeopardy to attach. Do you think the Supreme Court's, the case that's going to the Supreme Court in Hayman will affect the outcome of this case in terms of how we should analyze it? Well, I think the issue is very similar. In that case, of course, I'm basing a lot of my argument on the foundation of that which involves a similar argument regarding subsection K. The government did petition for writ of certiorari which has now been granted by the Supreme Court. The government has filed its opening brief. The respondent's brief is due Friday and oral argument is now set for February 26th. Could that have an effect on this case? Absolutely. Now, there is also some other arguments in that case that don't have a specific effect on this case, but absolutely depending on the wording of that Supreme Court decision, it could have an effect on this case. Allowing simultaneous supervised release revocations for the commission of a new offense and prosecution for a new offense is deeply rooted in the theory that the new prosecution is for the new offense and the supervised release revocation is a modification of the original sentence, a modification based on many factors independent of the actual new offense. Courts have long recognized a modification of judgment based on a breach of trust or a failure to abide by terms of release is appropriate, but in recognizing that theory, courts have cautioned that that theory fails if punishment is based on the new offense which is what is happening under subsection G. Until now... In that Tenth Circuit opinion, as I understood it, the court was saying that after the supervised release violation, there was a new maximum punishment available. It was not available at the time of the original sentencing. And in this case, as I understand it, there's no change to the available penalties. It's still the same range that was available at the original sentencing. Is that true and does that make this distinguishable from Hayman? It is partially true. That Tenth Circuit case had to do specifically with the constitutionality of subsection K, and the court held it unconstitutional for two reasons. One reason was exactly as you stated, that it increased that mandatory minimum sentence. Was it the mandatory minimum or the maximum? I'm sorry, maximum, sorry, yes. It might have been both, but go ahead. And the second reason was specific to it punished for a new enumerated offense. It's plain that that happened in that case, argue at least it seems to me, because they imposed a mandatory minimum five-year sentence. In this case, Congress just says a term of imprisonment, which as an old district court judge means could be anything from time served to the statutory maximum. And so really the authority still is entirely vested in the district judge, and it's still a revocation. And if you look at the sort of the sentencing guidelines and the sentencing statute that relates to revocation of sentences, what the factors we'd consider would not be the new punishment. It would simply be what happened, what's the failure to comply with the court's previous order, and there's nothing here that requires you to punish someone specifically for this act. So this specific section, subsection G, says if this is your new crime, if possession of a firearm is your new crime, your revocation must be revoked and you must be imprisoned. Yeah, and it could be time served. It could be one hour. It is still a punishment for that new crime. But they would be the same punishments that would be available if there were another triggering offense, correct? It could be. But I mean the same range of potential sentences is present for the new gun felony versus a drug possession. I'm sorry, can you state that again? The same range is available to the district sentencing judge that would be available if the triggering offense was a drug offense versus a weapon offense that this was. Yes, it changes nothing about the sentencing range. It just mandates the imprisonment. Well, I thought that is a change. I thought your point was that is a change, that in a drug violation, the judge could say I'm going to revoke you but no imprisonment. So subsection G specifically says it mandates revocation, it mandates prison time. Oh, I see. Drugs listed in G as well. But there could be some other violation that was just covered by E3. Exactly. So do you agree that time served would be an option for a judge under G2? I do not believe that time served would be an option. I believe that there must be a mandatory prison time as required under that statute. And so if somebody sat and you just say time served, he gets credit for the time he sat, he sat, right? Oh. I mean, because the guy's always arrested, right? I mean, you know, under these circumstances, someone's always taken into arrest, they're always arrested, they're always taken into custody, and they're always taken into custody at least long enough to fingerprint them and take their mug shot, right? And so time served could be as little as, yeah, you know, the 42 minutes you spent before you bonded out. I would, so yes, so time served, so here's the distinction, I'm sorry, and here's why I answered the question the way that I did. I was under the impression that your question to me about time served was the time served in the original sentence, not the time served at the time of the arrest for the new offense. I probably wasn't precise. I'm just saying I don't see how it is that you ever get charged with a new offense without being taken into custody generally. So in my particular case, my guy was taken into custody. He was released pending application for a warrant. But once the supervised release officer filed for revocation, he was then arrested, and he did, in fact, he started serving some time. He was not given time served in this particular case. Well, but if it's true that the judge could say I'm sentencing you to a term of imprisonment of time served and that every person who's revoked would have some minimal time that would be, quote, served while he's being fingerprinted or whatever, then doesn't that defeat your argument that this statute requires something more for a firearm possession than for any other violation? It doesn't matter that the statute says it can be an extremely minimal amount of prison time. It is still punishment for a new offense. Even if it is 48 hours, even if it is 42 minutes, it is still punishment for that new crime. The government, in the opening brief to the Supreme Court on page 49, cites the dissenting opinion in Hammond, and it basically says, well, they weren't enumerating offenses in subsection K that had to be punished. That was simply just Congress telling you that there are some violations that are particularly serious offenses, and it's not really mandating based on what the offense is. It's just kind of listing what these particularly serious offenses are. They actually cite this dissenting opinion where Judge Kelly says Congress can determine that the commission of certain crimes constitutes a more serious breach of trust, and that is what the government argues, that the plain meaning assigned to K in that particular case, that wasn't Congress's intent. They were just simply pointing out certain crimes constituted a more serious breach of trust, and here's why that argument fails. First, you know what's not on that list? Murder. Apparently, if your new crime is murder, your supervised release has no mandatory revocation or carries no mandatory prison time. Murder, apparently, can be dealt with under section 3583E. And the second reason that argument fails is that the intent of Congress is irrelevant where the plain meaning of a statute can be determined, and there's nothing confusing or undecipherable about the language of K or G that would warrant a debate on congressional intent. Two, subsection G is also to some extent unnecessary, and I would say to you that my argument doesn't mean that the sky is falling. Absent subsection G, revocation proceedings can proceed under 3583E. The court can look at all the factors listed in 3553 to determine how to appropriately handle the breach of trust and the failure to comply. If G had not existed in Mr. Wilson's case, he would have been subject to the revocation proceeding under subsection E, where the court would have made its own determination as to the factors in 3553, assessed Mr. Wilson's situation, the facts before it, and administered the appropriate sentence of modification based upon the breach of trust. Mr. Wilson would have been subject to his pending federal crime. His guideline range for the new offense would have been enhanced by virtue of his committing it while on supervised release, and he would still be subject to the pending state case in Jefferson County. But subsection D did exist, and this court can reach no other conclusion than the district court judge did exactly as mandated by Congress and imposed punishment for that new offense. Until now, this language in subsection G has been a sleeping giant. Now awakened, it's a slap in the face to the court's longstanding theory about modification of the original sentence. It's a slap in the face to the Fifth Amendment, and it begs to be recognized, preconized, and extinguished. Again, the sky is not falling. There is a hesitancy when faced with the wording of a longstanding and well-used statute that a declaration as to its defectiveness would have unresolvable and colossal consequences, and that's not the case here. While a ruling in my favor would affect a good number of cases, Congress can simply eliminate subsection G and solve this problem. Thank you, Counsel. Ms. Fleming? If I may, Your Honors. May it please the Court. On behalf of the United States, I am asking that the Court affirm the district court's denial of the defendant's motion to dismiss the indictment by finding that Title 18, United States Code Section 3583G does not trigger the Double Jeopardy Clause, thus precluding the indictment that was filed in this case. I think it is important for the Court to focus on the actual issue over which it has jurisdiction in this case, and that is whether Section 3583G actually triggers the Double Jeopardy Clause, thus precluding a subsequent indictment based on the same offense conduct. The Supreme Court and this Court have repeatedly answered that question in the negative. First, because when a defendant is on supervised release and that supervised release is revoked, he is not being prosecuted. Because he is not being prosecuted, the Double Jeopardy Clause does not attach. The United States Supreme Court in Johnson confirmed that that is the case whether the triggering offense is criminal or non-criminal. It does not matter. And because Double Jeopardy does not attach, an indictment based on the same offense conduct that formed the basis for the revocation is not prohibited. Does it matter at all what the potential penalty is for the revocation or that's attached to the revocation? No, Your Honor. I would argue that that goes to the second part of the Double Jeopardy Clause, whether the defendant is being punished twice for the same offense. And with respect to revocation, the Supreme Court has again answered that question. In fact, it said when the defendant violates supervised release, the sentence imposed upon revocation is the execution of the original sentence. It is not in addition to or instead of the sentence. It is simply part of the sentence that was imposed for the original conviction. Could that sentence extend the range for the original crime? Your Honor, I'm sorry. Could you repeat that? I'm sorry. Could that sentence that's imposed on revocation raise the statutory limit for the original crime? Your Honor, it's the United States' position that if you look at the final judgment as a package, and that package includes a variety of components. It can include a fine. It can include restitution, a term of imprisonment, and supervised release. That supervised release in turn includes a variety of components, general conditions, standard conditions, mandatory conditions, and each one of those carries with it a potential punishment. When you look at, as the Supreme Court has said, when a defendant is revoked, it is the original sentence that is being executed. Part of that original sentence includes the supervisory release conditions and the punishments attendant to those. This is a sentence that a defendant was initially received and was exposed to the entire time. I would argue, however, that that does not matter in this case. In this case, all we are dealing with— Does it matter that Congress chose to enable a district court to sentence someone to time beyond what the original offense included? No, Your Honor. I would argue again that that is part of the original sentence, that that was part of the final judgment package, and the defendant was exposed to that from the very beginning. In fact, provided notice of it, and that was part of the original sentence that was being executed. I think the second circuit in Meeks points out— Because if you look at subsection G, simply because the defendant possessed a firearm, that does not necessarily mean that that was a criminal offense. It could still be non-criminal. For instance, in a state where the firearm was manufactured, you wouldn't have a 922G offense simply because he possessed a firearm. But the section also includes conduct that is obviously non-criminal. The second circuit in Meeks points out that if a defendant can be sent back to jail for a violation that is not a crime, then it must be that the punishment imposed is part of the sanction for the original crime. In other words, back to my original argument that the final judgment is a package, and that is part of the package to which the defendant was sentenced based upon the original conviction. I would argue in this case that the defendant is, in fact, not being punished twice for the same offense. And I think that, again, the defendant has failed to offer any compelling support for the argument that because subsection G requires mandatory revocation, that the sentence imposed upon revocation refers to the triggering offense and not the original conviction. I think logically, obviously, the court is looking at the triggering offense to determine revocation or the nature of the sanction imposed. That's the case with respect to every violation, no matter what subsection it's under. Nothing in the case law or in the Constitution requires that every violation for supervised release must be, the revocation must be discretionary. There's absolutely no support for that, just as there's no support for the fact that every violation of supervised release must carry the same range of punishment. And that's consistent with the breach of trust theory behind revocation. Congress has deemed, and it is their prerogative to deem, that certain violations that it feels are more serious for whatever reason necessitate mandatory revocation. In subsection G, it felt that those violations, my guess is because they directly affect the safety of a probation officer, a community, or the defendant, him or herself, necessitate mandatory revocation, just as Congress found that other breaches of trust do not. And that that revocation, based on those violations, could be discretionary. Are you familiar with any other provisions that have mandatory revocation? I'm sorry, Your Honor? Are you familiar with any other provisions that have mandatory revocation? G and K. So, under 3583, you can be revoked under E, G, or K. E, of course, is discretionary and provides various penalties upon, and provides, in fact, the sentencing scheme for revocations under G. G is obviously the subsection at issue, and then K is a subsection that was the issue in Haymond. But G is different than K in just a lot of respects. You know, you look at G, and you can be mandatorily revoked because you declined to participate in drug testing, which is not criminal anywhere that I know of. And you can be revoked because you have three positive tests while you're on supervision. And once again, positive drug tests in most places is not criminal conduct, right? And so it seems like it's all tied. And even if you look at the firearms section, it talks, there's bifurcation. It says there's violation 921 or merely possessing. You know, and the merely possessing, you know, may or may not be criminal as you've indicated. You know, it's got to be a firearm that meets the definition, so some of the things like antique weapons and stuff don't count. But there are firearms that you manufacture yourself, right? Exactly, Your Honor. That would be lawful for you to possess. They're not otherwise prohibited, right? Right, Your Honor. And that was the court, the Second Circuit's point in Meeks. And they said, well, if you can send a defendant back to jail for simply refusing to do drug counseling or failing a drug test, then the punishment upon that revocation has to relate back to the original crime. Otherwise, it's illogical. It's the United States' position that the defendant's analogy to Haymond is simply misplaced. And first, I'd point out that the issue in Haymond was whether Subsection K was unconstitutional or not, and that's not what we're dealing with here. That's not an issue over which this court has jurisdiction in this case. The issue here, which was not the issue in Haymond, was whether double jeopardy attached. Second, I would point out that the holding in Haymond was not that mandatory revocation without a jury finding beyond a reasonable doubt was unconstitutional. The holding in Haymond was that the mandatory range of punishment, which exceeded both actually the statutory floor and ceiling of the original offensive conviction, was unconstitutional without a jury finding beyond a reasonable doubt. And because they said it would violate double jeopardy. I'm sorry, Your Honor. And because they said it would constitute double jeopardy punishment twice for the same offense. I believe their argument was more of the constitutionality of K, and that was what was at issue because the defendant in that case was being revoked under K. And it was the United States position, and still obviously remains the United States position, that the Haymond court, in fact, missed the mark on that one. And it is the position that because revocation is the execution of the original sentence and not a new criminal prosecution or not the imposition of a sentence, and the Sixth Amendment doesn't apply. And, of course, carrying that forward, if the Sixth Amendment does not apply, then Booker does not apply. And the heightened punishment under subsection K was part of the defendant's original sentence, again, that was executed upon the revocation. It was simply not a new punishment. It was part of that, as I keep saying, part of that original package. But, again, assuming for the sake of the argument that the Haymond decision was correct, and it is affirmed by the Supreme Court, it's still distinguishable from the situation that's before the court here in this case. The heightened punishment that was the subject of subsection K is not part of subsection G. In fact, subsection G simply refers to subsection E, and that's where the sentence comes from. It does not increase the statutory floor or the ceiling for the original offensive conviction. In fact, it is within the statutory reigns for that original offense. And it also keeps the discretion with the district court to determine that punishment. It does not take it away and set, as I said, a statutory floor or a statutory ceiling on that. Nothing about the mandatory nature of the revocation in subsection G changes that. In fact, I would go so far as to say that based on the rationale that was used by the Haymond court to find subsection K in constitutional, that it would not, in fact, if presented with subsection G, make the same finding. I don't believe that it would find it unconstitutional if it applied the same rationale that it used when analyzing subsection K. So accordingly, unless the court has no further questions, the United States is asking again that this court affirm the district court's denial of the defendant's motion to dismiss the indictment. May it please the court. Johnson did say that we could have supervised release revocation hearings and separate those if we are basing our punishment on the original offense and modification. But Johnson warned this is not true if we are punishing based on what the new crime is. And that's exactly what the court said in their brief. And the judge, you hit the nail on the head. There were two reasons that Haymond said this doesn't work. One had to do with the sentencing issue. But they specifically said, second, subsection K is unconstitutional because it circumvents the protections of the Fifth and Sixth Amendment by expressly imposing an increased punishment for specific subsequent conduct. Johnson and the Supreme Court made clear in Johnson that to avoid serious constitutional concerns, revocation of supervised release must be viewed as punishment for the original crime of conviction. And that's where Congress went off the rail here in this particular subsection. The government in its brief in Haymond reaffirms that there were these two rationales for the constitutionality of subsection K. And that the second was that the court took the view, this is page 16 of their opening brief, the court took the view that subsection 3853K impermissibly requires a term of imprisonment based on the commission of a new offense, namely a criminal offense as enumerated in that section. Thank you, Counsel. Thank you. Ms. Dillon-Emelung, the court notes that you're serving today under the Criminal Justice Act by appointment. And we wish to express to you our gratitude for your willingness to serve. Thank you, Judge, for allowing me to do that and for granting the oral argument. Thank you both for your presence and the argument you provided to the court in the briefing. We'll take the case under advisement.